(82 South. 470)

ATLANTA, B. & A. RY. CO. v. BALLARD.
(6 Div. 888.)

(Supreme Court of Alabama. May 15, 1919. Rehearing Denied June 30, 1919.)

1. RAILROADS  ⬲414—INJURY TO ANIMAL ON TRACK—LIABILITY.

Where a frightened animal flees before an approaching train and runs into a trestle and is injured without contact with the train, recovery may be had without showing willful or wanton misconduct on the part of the trainmen.

2. RAILROADS  ⬲419(4)—FRIGHTENING ANIMALS—LIABILITY.

The trainmen must use due care to avoid driving animals into a trestle, and when it appears that an animal is not going to leave the track before it reaches the place of danger, the trainmen must stop the train and drive the animal off the track before proceeding further.

3. RAILROADS  ⬲419(4)—FRIGHTENING ANIMALS—LIABILITY.

Where an animal can without great danger to itself leave the track and thus avoid a trestle, the trainmen may presume that it will do so, but they should sound the alarm and check the speed so as to bring train under control, and where the animal is on a fill so high that it cannot be reasonably expected that it will leave the track, the train should be stopped, if possible, at a reasonable distance behind the animal and before it has reached the trestle.

4. RAILROADS  ⬲446(10)—INJURING ANIMALS RUNNING ON TRESTLE—QUESTION FOR JURY.

In case of injury to an animal frightened by train and running into a trestle, the question of negligence and whether seasonably stopping of the train would have checked the flight and prevented the injury are ordinarily for the jury.

5. TRIAL  ⬲251(3)—INSTRUCTIONS—NOT APPLICABLE—REFUSAL.

Where complaint for injuries to horse does not count on a willful wrong, requested instructions relating to that theory of the case were abstract and properly refused.

6. RAILROADS  ⬲446(10)—INJURY TO ANIMAL ON TRESTLE—QUESTION FOR JURY.

In action for injury to a horse frightened by the train and running into a trestle, whether there was negligence in the operation of the train which proximately contributed to the injury held, under the evidence, for the jury.

Mayfield, J., dissenting.

---

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Action by J. A. Ballard against the Atlanta, Birmingham & Atlantic Railway Company. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 450. Affirmed.

The complaint charges that the defendant negligently caused one horse the property of the plaintiff to run into a trestle on defendant's railroad in the city of Bessemer and thereby injured it so that it was practically worthless.

Demurrer being overruled, the cause was tried on the general issue. The evidence showed that in approaching Bessemer defendant's track ran through a cut of several hundred yards, then on a level for a few yards, and then on a fill ranging from 1 to 25 feet high as it approached the trestle. About 75 yards below the mouth of the cut was a church, and 75 yards further on was the home of the witness Fredenberg, which itself was about 4 blocks from the trestle. The evidence is further stated in the opinion.

The assignments of error are based on the overruling of the demurrer to the complaint and on the refusal of the general affirmative charge and numerous special charges requested by defendant.

Tillman, Bradley & Morrow, of Birmingham, and Huey & Welch, of Bessemer, for appellant.

Goodwyn & Ross, of Bessemer, for appellee.

SOMERVILLE, J. This court has several times considered at some length the question of the liability of a railroad company in cases where animals have gone upon the track, and, being frightened by an approaching train, have attempted to escape by running down the track and into a trestle, and thereby suffered injury.

The complaint in this case is a literal copy of the complaint exhibited in the case of Ala. Gr. So. R. R. Co. v. Hall, 133 Ala. 362, 32 South. 259. It was there held that the complaint stated a cause of action, and was not subject to demurrer on the ground that the allegations of negligence were too general, or that it failed to show that defendant owed any duty to plaintiff with respect to the injured animal. In affirming the propriety of the refusal of the general affirmative charge for the defendant the law of the case was thus stated by the court:

"Seeing the horse running directly toward the trestle in fear of the advancing train, the surroundings being such as that he would probably continue his flight along the track into the trestle if the train continued to advance, the engineer owed the plaintiff the duty of stopping the train and thereby removing the cause of the flight of the animal, and if he negligently failed to discharge this duty, and in conse-

quence the horse was injured, the defendant is liable."

In that case the evidence tended to show that the train was only 30 to 50 yards behind the horse, which was running toward the trestle about 75 yards away, on a 6-foot fill, and the train was gaining on the horse.

The rule of duty laid down in the Hall Case, supra, was discussed and applied by the Court of Appeals in So. Ry. Co. v. Hobson, 4 Ala. App. 408, 58 South. 751.

In N., C. & St. L. Ry. Co. v. Garth, 179 Ala. 162, 59 South. 640, 46 L. R. A. (N. S.) 430, upon an extensive survey of the authorities, it was said:

"From these decisions of our own court, in connection with the decisions of other courts, we extract the principle that, as to the initial fright, the company is not liable, unless the acts of the servants of defendant were wanton and malicious; but after the animal is on the track, frightened, and running under conditions that indicate that, unless the train is stopped, it will run into the trestle, and that the danger may be averted by stopping the train, a duty arises to stop it; and if the engineer negligently fails to do so the company will be liable."

It was there held that the general affirmative charge should have been given for the defendant, because there was "no testimony tending to show that the engineer negligently failed to use the means to stop the train after the animals were on the track, and running down it, frightened."

This statement of the law was seemingly approved in a second appeal of the Garth Case (Garth v. N., C. & St. L. Ry. Co., 186 Ala. 145, 65 South. 166), wherein it was said:

"There is no evidence tending to show actionable negligence in the failure of the engineer to stop the train after he perceived, or should have perceived, that the animals were not going to leave the track. In fact, as above stated, all the evidence shows that he did stop the train before it reached the animals. And this was all that could be required. As was said on the former appeal, there is nothing to show that the animals could not have run off the track, and the trainmen, therefore, had the right to presume that they would leave the track, and not run down the track into the trestle as they did."

To this was added the following statement:

"The animals in this case being on the track without fault on the part of the railroad company, and the train not colliding with them, and there being no evidence of wanton wrong or willful injury, there is, and should be, no liability on the part of the railroad company for the injury or for the damages suffered in consequence of the colts' becoming frightened or stampeded, and running into the trestle, instead of leaving the railroad track as they could have done."

This language is substantially embodied in the second headnote of the report, as the statement of a rule of law.

In the recent case of North. Ala. Ry. Co. v. Foster, etc., Co., 76 South. 979,[1] that headnote is quoted and affirmed as the basis of decision, and it was said:

"Since the plaintiff did not declare on any wanton wrong, and since the evidence disclosed no fact or circumstance tending to show any willful or wanton omission or misconduct on the part of any of the defendant's servants on that occasion, it was error to refuse the general affirmative charge requested in its behalf by the defendant."

In the Garth Cases the complaint counted on simple negligence only, i. e., in causing the animals to become frightened by an approaching train, and causing them to run into the trestle. In the Foster, etc., Co. Case, also, the complaint counted on simple negligence only, i. e., in negligently continuing to approach the animal on the track ahead, with a train of cars, "well knowing that so to do would likely or probably cause the said mule to run into the said trestle and injure itself, and did force or cause said mule to run into said trestle and injure itself as aforesaid."

We have reviewed these cases at some length for the reason that counsel for the opposing parties seem to agree that they present some conflict of expression, if not of decision, and that there must be modification somewhere, if harmony is to be preserved.

[1] Defendant's contention is that, where an animal is not actually struck by its train, there can be no liability in cases where the animal flees down the track before an approaching train and runs into a trestle, unless there has been willful or wanton misconduct on the part of its trainman, that is, conduct either of omission of commission, which is consciously calculated to produce the injury, with the means of avoidance at hand, upon which is based the further contention that, where the complaint shows that the injury resulted from the frightened action of the animal, without contact with the train, it is subject to appropriate demurrer.

Both of these contentions are unsound, and must be rejected. N., C. & St. L. Ry. Co. v. Garth, 179 Ala. 162, 59 South. 640, 46 L. R. A. (N. S.) 430; A. G. S. R. R. Co. v. Hall, 133 Ala. 362, 32 South. 259.

[2] The doctrine of these cases, and of other well-considered cases in other jurisdictions, is that the trainmen must use due care to avoid driving an animal on the track in front of the train, into a trestle, or other dangerous place; and, when it appears that the animal is not going to leave the track before it reaches the place of danger, it becomes the duty of the trainmen to stop the train and drive the animal off the track before proceeding further.

[3] Where the animal can, without great danger to itself, leave the track and thus avoid the danger ahead, the trainmen may presume that it will do so. Garth v. N., C. & St. L. Ry. Co., 186 Ala. 145, 153, 65 South. 166. But it would be their duty to sound the alarm, and also to check the speed of the train so as to bring it under control.

Where, however, the animal is on a fill so high and so precipitous on both sides that it cannot be reasonably expected that it will attempt to leave the track, and it shows no disposition to do so, due care would require that the train be stopped, if possible, at a reasonable distance behind the animal, and before it has reached the trestle.

[4] The question of due care or negligence in such cases is ordinarily for the jury to determine; and whether or not seasonably stopping the train would have checked the flight of the animal, and thus prevented its injury, is also usually a matter of inference to be drawn by the jury. A. G. S. R. R. Co. v. Hall, 133 Ala. 362, 367, 32 South. 259.

In so far as the dicta in Garth v. N., C. & St. L. Ry. Co., 186 Ala. 145, 65 South. 166, and the decision in North. Ala. Ry. Co. v. Foster, etc., Co., 76 South. 979,[1] are in conflict with the foregoing statements of principle, they must be pronounced unsound and overruled.

[5] In the instant case the complaint does not count upon a willful or wanton wrong, and hence all of those requested instructions relating to that theory of the case were abstract and properly refused.

[6] It only remains to consider whether or not defendant was entitled to the general affirmative charge as requested; and, if not, whether the verdict was so clearly against the weight of the evidence as to require that it be set aside, and a new trial ordered.

It appears that the only witness who saw the animal go upon the trestle was the engineer in charge of the engine. He testified that when the horse came on the track, right about the church, and close in front of his train, in company with a mule, he was running his train about 12 to 15 miles an hour, under full control, and that he brought his train to a stop, right at the church, and about 4 blocks from the trestle. As he did so, the mule left the track, and the horse ran on down the track. While the train was stationary, the horse moved on about 2 blocks, stopped and looked back, and then walked about halfway across the trestle. He (witness) then moved his train on down to within a block—about 100 yards—of the trestle, where he stopped, and some of them got off and went forward to assist in getting the horse out of the trestle. As to these stops and distances, the engineer was corroborated by one of his trainmen. This tes-

[1] 200 Ala. 621.

timony, if believed, would clearly refute the charge of negligence in causing the horse's injury.

Plaintiff's contention, however, is that the testimony of his witness Fredenberg materially contradicted the other testimony, and properly carried to the jury the issue of negligence vel non; i. e., whether the engineer seasonably stopped his train, in view of the situation and conduct of the horse. Fredenberg testified as follows:

"I was sitting on my porch. * * * I saw the train pass about 75 yards away. * * * It was running about 6 miles an hour, a little faster than a man can walk. I did not see the train when it stopped first. It stopped before it got to the cut. I do not know whether it stopped before I saw it or not. I live about 75 yards from the little green church. The train did not stop above that church. I was looking at it at that time. I saw it when it first came out of the cut. It was running pretty fast then, about 15 miles an hour. It slowed down to about 6 miles an hour gradually all the way along until it got to the trestle. It passed my house at about 15 miles an hour. It slowed down to about 6 miles an hour after it passed my house. It was down to the trestle before it started to slow down."

This witness stated also that he did not see the horse at all until after it had gotten into the trestle.

It is apparent that Fredenberg's testimony is in conflict with that of the engineer and the trainman, Harris, as to the stopping of the train at the church, and as to the speed at which the train approached the trestle after passing the church. And, if his testimony on these points were accepted as true, it would permit an inference by the jury that there was negligence in the operation of the train which proximately contributed to the injury of the horse.

The issue was, therefore, properly submitted to the jury.

We do not overlook the argument of counsel that certain conditions disclosed by the evidence in the Hall Case and the Hobson Case, supra, are absent here; as, for example, that in those cases the train was gaining on the animal while he was fleeing and when it ran into the trestle. That, however, was but an incident of the proof, and not an essential factor in the application of the rule of due care.

The assignment relating to the action of the court in overruling the motion for new trial is not sufficiently argued in brief to entitle it to consideration.

We have examined all of the other assignments of error, and find none that can be sustained.

Let the judgment be affirmed.

Affirmed.

All the Justices concur, except MAYFIELD, J., who dissents.